IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| FREDRICA DICKSON on Behalf of Herself and on Behalf of All Others Similarly Situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CONTINUUM GLOBAL SOLUTIONS, LLC,<br><br>　　　　Defendant. | Civil Action No. 3:21-CV-01528-K |

MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Continuum Global Solutions LLC's ("Continuum" or "Defendant") Motion to Dismiss and Compel Arbitration and Memorandum of Points and Authorities (the "Motion") (Doc. No. 26), Plaintiff's ("Plaintiff" or "Dickson") Response to Defendant's Motion to Dismiss and Motion to Compel Arbitration (the "Response") (Doc. No. 31), Defendant Continuum Global Solutions LLC's Reply in Support of Its Motion to Dismiss or Compel Arbitration (the "Reply") (Doc. No. 33), and Plaintiff's Sur-Reply to Defendant's Reply in Support of Defendant's Motion to Compel Arbitration (the "Sur-Reply") (Doc. No. 41). The Court has carefully considered the Motion, the Response, the Reply, the Sur-Reply, the relevant appendices, and the applicable law. Because the Court finds that a valid

1

arbitration agreement bind the parties to this action, the Court **GRANTS** Defendant's Motion.

I.    Background

Named Plaintiff Dickson filed this potential collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-19, on behalf of herself and others similarly situated. Doc. No. 1. In her Complaint, Dickson advances a cause of action against Defendant for failing to pay overtime in violation of the FLSA. *See id.* at 7-9. Defendant maintains that Plaintiff and each employee and former employee who filed a consent to opt-in ("Opt-In Plaintiffs") to this action voluntarily entered into valid and enforceable agreements to arbitrate all claims arising out of their employment— and to do so only on an individual basis. Doc. No. 26 at 10. As such, Defendant motions this court to compel arbitration and dismiss this action under Fed. R. Civ. Proc. 12(b)(1) (lack of subject-matter jurisdiction). *See* Doc. No. 26 at 10, 15, 33. Former Opt-In Plaintiffs Joseph Rodela, Darby Keely, and Ethan Lewis have agreed to pursue their claims in arbitration and are no longer part of this action; eighteen Plaintiffs remain. *See* Doc. No. 31 at 6 n.1.

Defendant Continuum operates customer service call centers across the United States. *See* Doc. No. 1 at 3. Although both Named Plaintiff and Opt-In Plaintiffs are all employees (or former employees) of Continuum, Named-Plaintiff was hired by Conduent Business Services, LLC ("Conduent"); certain Opt-In Plaintiffs were also not hired by Continuum, but by Conduent or Xerox Business Services, LLC ("XBS"). *See*

2

Doc. No. 26 at 11-12. In or around 2010, XBS acquired Affiliated Computer Services Inc. (ACS) *See* Doc. No. 27 at 6. Later, in or around January 2017, XBS formed Conduent. *Id.* Then, after Conduent finalized a sale of certain assets in or around February 2019, both Named Plaintiff and Opt-In Plaintiffs became employees of Continuum. *See* Doc. No. 26 at 12; Doc. No. 27 at 61.

## II.   Legal Standards

Both parties apparently agree that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, applies to this dispute. *See* Doc. No. 26 at 15; Doc. No. 31 at 6. When deciding motions to compel arbitration under the FAA, courts apply a summary judgment-like standard (*see Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 443 (N.D. Tex. 2019) (Scholer, J.)) and use a two-step inquiry: "First the court must determine 'whether the parties entered into *any arbitration agreement at all*.' This first step is a question of contract formation only—did the parties form a valid agreement to arbitrate some set of claims." *IQ Prod. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017) (quoting *Kubala v. Supreme Production Services, Inc.*, 830 F.3d 199, 201-02 (5th Cir. 2016)). "Determining whether there is a valid arbitration agreement is a question of state contract law and is for the court." *Kubala*, 830 F.3d at 202. Then, if the court finds there is a valid agreement to arbitrate, it proceeds to the second step and determines whether the agreement contains a valid delegation clause. *IQ Prod. Co.*, 871 F.3d at 348. A delegation clause transfers "the power to decide threshold questions of arbitrability to the arbitrator . . . ." *Kubala*, 830 F.3d at 201.

3

Under the FAA, "[a] district court must hold a trial on the existence of an arbitration agreement if a motion to compel arbitration is filed and 'the making of the arbitration agreement . . . [is] in issue.'" *Chester v. DirecTV, L.L.C.*, 607 F. App'x 362, 364 (5th Cir. 2015) (citing 9 U.S.C. § 4). Thus, once a defendant meets its initial burden of proving the existence of a valid agreement to arbitrate, the burden shifts to the plaintiff to put the making of that agreement "in issue." *Id.* To do this, a plaintiff must "unequivocally deny that [it] agreed to arbitrate and produce some evidence supporting [that] position." *Id.*

At the time this lawsuit was filed, Named Plaintiff worked for Conduent (and then Continuum) in North Carolina. *See* Doc. No. 1 at 4. Opt-In Plaintiffs applied, were onboarded, and worked out of various states across the country including Idaho, Indiana, New York, North Carolina, Oregon, Texas, and Washington. *See* Doc. No. 26 at 19-24. Parties agree that the various state laws applicable to this case do not materially differ in terms of the requirements for valid contract formation. *See* Doc. No. 31 at 14.

### III.  Analysis

#### A. *Is there a valid agreement to arbitrate?*

Defendant's Dispute Resolution Plant ("DRP") was originally disseminated in 2002 by ACS, according to the sworn Declaration of Kerri Odle—Conduent's Director of Human Resource Governance and Compliance. Doc. No. 27 at 62. A revised version of the DRP was distributed in 2012 by XBS. *Id.* Then, when Conduent was formed in

4

2017, it reissued the DRP under its name. *Id.* Importantly, however, the DRP has not been substantively revised since 2012. *Id.* Before the early 2019 conclusion of Conduent's sale of assets to what became Continuum, Conduent operated the customer care assets at issue; the transition of the business from Conduent to Continuum was governed pursuant to a Transition Services Agreement ("TSA"). *Id.* at 61. Per the TSA, from February 1, 2019 to around December 19, 2019 (the "Transition Period"), "Conduent continued to perform and oversee the new employee application and onboarding process for Continuum, including obtaining the mandatory agreement to participate in the [DRP]." *Id.* During the Transition Period, Continuum used the Conduent DRP, though with Continuum branding. *Id.* at 62; *see id.* at 19-39.

Conduent utilizes an online application and new employee onboarding system. *Id.* at 63. This system was also used for Continuum applicants during the Transition Period. *Id.* According to Odle:

> In the "Policy Consent" section of the application, applicants are required to affirmatively agree to be bound by the DRP as a condition of their application for employment being considered by the Company. During this portion of the application, the applicant is electronically presented with the full, unabridged text of the DRP on a pop-up screen and asked to affirmatively check a box if he/she agrees to be bound by the DRP.
>
> . . . .
>
> In order to submit an application for consideration, the applicant must click his or her confirmation of the following statement: "I agree to the terms of this Agreement and to be bound by the Conduent Dispute Resolution Plan and Rules." The application system will not permit an application for employment to be submitted unless the applicant has agreed to company policies, including the DRP.

*Id.* at 63-64. The DRP states in part:

> All Disputes not otherwise resolved by the Parties shall be finally and conclusively resolved through arbitration under this DRP, instead of through trial before a court (including a jury trial). The Parties forego any right they may have to a bench trial or jury trial on a Dispute.
>
> To the extent allowed under the law, each Dispute not otherwise resolved by the Parties shall be arbitrated on an individual basis. Except for Disputes asserted by named plaintiffs or putative plaintiffs in a class, collective, consolidated or representative action pending in court before the Effective Date, neither an Employee nor the Company may initiate or participate in a Dispute on a class, collective, or consolidated basis, or in a representative capacity on behalf of other persons or entities that are claimed to be similarly situated. An Applicant may not participate in a class, collective, consolidated or representative Dispute that has been filed against the Company before the Applicant's first day of employment. The arbitrator shall have no authority to arbitrate a Dispute as a consolidated, class, collective or representative action.
>
> . . . .
>
> Unless otherwise required by law, proceedings under the DRP shall be the exclusive method by which Disputes are resolved. Arbitration under the DRP shall be final and binding, subject only to review as provided from in the Act.
>
> . . . .
>
> Employment, consideration for employment, or continued employment, and other valuable consideration after the applicable Effective Date of the DRP constitute consideration and consent to be bound by the DRP, including its mandatory arbitration provisions, by the Applicant and/or Employee, on the one hand, and the Company, on the other hand, during and after the employment relationship. Submission of an application, regardless of form, for employment constitutes consent by both the Applicant and the Company to be bound by the DRP, as well as consideration. Extension of an offer by the Company constitutes additional independent consideration. The Parties' mutual promises to be

> bound by the DRP also constitute adequate and sufficient consideration to be bound by the DRP.

*Id.* at 87-91. Successful applicants for employment at Conduent (and Continuum during the Transition Period) review and sign an offer acceptance and other onboarding paperwork, including another agreement to arbitration (the "Second Agreement"). *See id.* at 65, 117, 207.

1. *"Unsigned" Plaintiffs*

Notwithstanding the DRP, Plaintiff raises a number of arguments regarding this Second Agreement to arbitration—primarily that because Defendant cannot prove that Opt-In Plaintiffs Belton-Clark, Dinkens, Handy, Hoeckendorf, Jones, Manis, McNiece, Morris, Park, and Smith (the "Unsigned Plaintiffs") signed the Second Agreement, it was not properly executed per its explicit language and therefore does not bind the Unsigned Plaintiffs. *See* Doc. No. 31 at 11-16.

Sure enough, the Unsigned Plaintiffs' Second Agreements lack signatures. *See* Doc. No. 27 at 172, 180, 191, 202, 210, 221, 232, 243, 254, 265. But even if the Second Agreements have no effect due to their lack of signatures, the Unsigned Plaintiffs are nevertheless bound by the terms of the DRP. Thus, the Court need not engage in an interpretation of the Second Agreement because Defendant has established that every Unsigned Plaintiff agreed to the terms of the DRP upon submitting their employment applications to Continuum.

Belton-Clark submitted her application for employment with Continuum via the online portal in or around August 2019. *See id.* at 74, 203, 206. Although Defendant does not offer a specific record of her agreement to the DRP in the application's Policy Consent section, Defendant has sufficiently established that Belton-Clark would not have been able to submit her employment application without so agreeing.

Dinkens submitted her application for employment with Continuum via the online portal in or around October 2019. *See id.* at 76, 233. An excerpt from Dinkens' application file indicates her agreement to the DRP in the application's Policy Consent section. *Id.* at 235.

Handy submitted her application for employment with Continuum via the online portal in or around June 2019. *See id.* at 71, 173. An excerpt from Handy's application file indicates her agreement to the DRP in the application's Policy Consent section. *Id.* at 175.

Hoeckendorf submitted his application for employment with Continuum via the online portal in or around July 2019. *See id.* at 72, 181. An excerpt from Hoeckendorf's application file indicates his agreement to the DRP in the application's Policy Consent section. *Id.* at 183.

Jones submitted her application for employment with Continuum via the online portal in or around November 2019. *See id.* at 77, 244. An excerpt from Jones' application file indicates her agreement to the DRP in the application's Policy Consent section. *Id.* at 246.

Manis submitted her application for employment with Continuum via the online portal in or around August 2019. *See id.* at 78, 255. An excerpt from Manis' application file indicates her agreement to the DRP in the application's Policy Consent section. *Id.* at 257.

McNiece submitted her application for employment with Continuum via the online portal in or around March 2019. *See id.* at 70, 162. An excerpt from McNiece's application file indicates her agreement to the DRP in the application's Policy Consent section. *Id.* at 164.

Morris submitted her application for employment with Continuum via the online portal in or around August 2019. *See id.* at 75, 222. An excerpt from Morris' application file indicates her agreement to the DRP in the application's Policy Consent section. *Id.* at 224.

Park submitted his application for employment with Continuum via the online portal in or around August 2019. *See id.* at 74, 211. An excerpt from Park's application file indicates his agreement to the DRP in the application's Policy Consent section. *Id.* at 213.

Smith submitted her application for employment with Continuum via the online portal in or around July 2019. *See id.* at 73, 192. An excerpt from Smith's application file indicates her agreement to the DRP in the application's Policy Consent section. *Id.* at 194.

Plaintiff argues that Defendant has not offered any evidence "that the Plaintiffs were presented, accepted or agreed to [the terms of the application's Policy Consent section]." Doc. No. 41 at 4. But as described above, Defendant has done more than that. Further, Plaintiff contends that Odle's Declaration "is hearsay, conjecture, and parol evidence that should be disregarded." *Id.* But why? According to Plaintiff, "Defendant's argument that the Court should look solely to the [DRP] and not to the [Second Agreement] is flawed because it 'places the cart before the horse.' Again, the [DRP is] not effective until the [Second Agreement] is signed by the employee." *Id.* at 4. Also, why? It appears that Plaintiff wants the Court to simultaneously disregard the Second Agreement for lack of a signature *and* give it effect insofar as—at least according to Plaintiff—its terms require a signature before an applicant is bound to the DRP. The Court cannot do both. And, as explained previously, the Court need not interpret the language of the Unsigned Plaintiffs' Second Agreements as Defendant has sufficiently established that every Unsigned Plaintiff agreed to the terms of the DRP upon submitting their employment applications to Continuum.

2. *Schwartz and Pinkney*

Plaintiff claims that Defendant's Motion should be denied "because there is no evidence Plaintiffs Pinkney and Schwartz ever entered any arbitration agreement with Defendant." Doc. No. 31 at 7. The Court will first analyze that claim as it applies to Opt-In Plaintiff Schwartz.

10

Schwartz submitted her application for employment with XBS via an online portal on or around August 2013; she is currently employed with Continuum. *See id.* at 9; Doc. No. 27 at 66. Although Defendant has not offered any Second Agreement for Schwartz, it has provided an excerpt from her application file which indicates her agreement to the DRP in the application's Policy Consent section. Doc. No. 27 at 103. Plaintiff challenges the Odle Declaration and argues the offered Policy Consent section of Schwartz's online application "is just a printout from Defendant's computer system and does not indicate that Plaintiff Schwartz was ever presented with an arbitration agreement or agreed to be bound by it." Doc. No. 31 at 10. However, if nothing else, the DRP is an agreement to arbitrate. And Defendant has established that Schwartz applied online, and that she would not have been able to submit her application without agreeing to the terms of the DRP. *See* Doc. No. 27 at 63-64.

Opt-In Plaintiff Pinkney presents a slightly tougher case, as Defendant is not able to find any of her onboarding documents—no Policy Consent section of an employment application and no Second Agreement, for example. *See id.* at 17. Nevertheless, Defendant argues that Pinkney can still be compelled to arbitration as it has established through circumstantial evidence that, based on the manner in which prospective applicants apply and new hires are onboarded, Pinkney must have agreed at least to the terms of the DRP. *See* Doc. No. 33 at 4. The Court agrees.

The Court applies the contract law of the state governing the alleged agreement. *See Banks v. Mitsubishi Motors Credit of Am. Inc.*, 156 F.App'x 710, 711 (5th Cir. 2005).

11

Pinkney worked for Continuum in Texas and was domiciled in Texas at the time of onboarding, so the Court applies Texas law. Parties also apparently agree that Texas law applies to this particular dispute. *See* Doc. No. 31 at 7 (citing *In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 367 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding)). Per Texas law, "if the agreement existed but cannot be produced because it has been lost or destroyed, a court may still enforce it and compel arbitration if the moving party can show its contents and that it was not lost or destroyed in bad faith." *White v. Turner*, No. CV H-15-1485, 2016 WL 1090107, at *3 (S.D. Tex. Mar. 21, 2016) (citing *Bituminous Cas. Corp. v. Vacuum Tanks, Inc.*, 975 F.2d 1130, 1132 (5th Cir. 1992); Tex. R. Evid. 1004; Fed. R. Evid. 1004).

Here, Defendant has demonstrated that Pinkney's application and onboarding documents have not been lost in bad faith. *See* Doc. No. 27 at 17. Based on the dates of Pinkney's paystubs (*see id.* at 55-58), it is very likely that she applied and was onboarded during the Transition Period. But regardless of whether Pinkney was onboarded by Conduent or Continuum, Defendant has established the terms of the DRP, that those terms did not materially differ in Continuum's DRP, and that she must have at least agreed to the terms of the DRP before submitting her application. *See id.* at 12-15, 19-39, 61-65, 80-100. Thus, the Court concludes that a valid arbitration agreement exists between Opt-In Plaintiff Pinkney and Defendant.

3. *"Non-Signatory" Plaintiffs*

Named Plaintiff argues that Defendant's Motion should be denied with respect to her and Opt-In Plaintiffs Ewing, Massey, McDonald, Romanihina, and Watkins (the "Non-Signatory Plaintiffs") because they never signed an arbitration agreement with Continuum but with a "third party." *See* Doc. No. 31 at 17. Among other evidence, Defendant offers each of the Non-Signatory Plaintiffs' signed Second Agreements. *Id.* at 106-07, 117-120, 125-28, 136-39, 147-150, 158-161. Massey was hired by XBS in or around May 2014. *See id.* at 104. Her Second Agreement with XBS states:

> I understand that references in this Agreement to XBS include all XBS parent, subsidiary, and affiliated entities, predecessors, and all of their directors, officers, Employees (as defined in the DRP) and agents, all benefit plans and their fiduciaries, agents, and employees, and the successors and assigns of all such entities, plans and persons.

*Id.* at 106. Every other Non-Signatory Plaintiff signed Second Agreements with Conduent. *See* Doc. No. 31 at 17. The Conduent Second Agreements state:

> I understand that references in this Agreement to Conduent include all Conduent Business Services and it's subsidiaries and affiliated entities, predecessors, and all of their directors, officers, Employees (as defined in the DRP), attorneys, and agents, all benefit plans and their fiduciaries, agents and employees, and the successors and assigns of all such entities, plans and persons.

*See* Doc. No. 27 at 118, 126, 137, 148, 159. The Second Agreements also incorporate the DRP by reference. *See* Doc. No. 27 at 107, 119, 127, 138, 149, 160.

13

The "successors and assigns" of XBS and Conduent include Continuum. Thus, Continuum can rely on the agreements to arbitrate between it and the Non-Signatory Plaintiffs.

B. *Has Plaintiff placed the making of the arbitration agreement in issue?*

Finding that Continuum can rely on the Non-Signatory Plaintiffs' agreements to arbitrate and that valid arbitration agreements exists per the terms of the DRP for the Unsigned Plaintiffs, Schwartz, and Pinkney, the Court now considers whether Named Plaintiff or any Opt-In Plaintiff placed the making of their arbitration agreement in issue. To put the making of an arbitration agreement "in issue," a plaintiff must "unequivocally deny that [it] agreed to arbitrate and produce some evidence supporting [that] position." *Chester*, 607 F. App'x at 364.

Here, Plaintiff attempts to do this by introducing sworn Declarations ("Plaintiffs' Declarations") of Schwartz and Unsigned Plaintiffs Dinkens, Handy, Jones, McNiece, Morris, and Smith. Doc. No. 32-1. Plaintiffs' Declarations are all substantially the same. They all broadly state: "I do not recall ever seeing, signing, or agreeing to arbitrate any claim against CGS." *Id.* at 1, 3, 6, 9, 11, 14, 17. They also all state: "I do not recall that, in order to apply for the position, I was required to agree to the terms of an arbitration agreement." *Id.* Such statements are not sufficient unequivocal denials. *See Chester*, 607 F. App'x at 364 (finding that Chester unequivocally denied making an agreement to arbitrate when he said "I do not

14

remember signing any arbitration agreement, *and dispute that I signed an arbitration agreement . . . .*").

Plaintiffs' Declarations also specifically discuss the Second Agreements. For those, all Plaintiffs' Declarations state: "I do not recall being presented with the [Second Agreement] at any time before or during my employment with CGS. I also do not recall being required to sign or consent to the [Second Agreement] before I accepted the position with CGS. I do not recall anyone from CGS speaking to me about the [Second Agreement]. Had someone from CGS discussed the clause with me, I would have asked questions because I do not understand what arbitration means or the arbitration process." Doc. No. 31-1 at 2, 4, 7, 10, 12, 15, 18. Even if these statements regarding the Second Agreements come closer to the required unequivocal denials, Plaintiffs fail to make any such denials regarding the DRPs—which the Court has already determined are independently valid agreements to arbitrate that bind Schwartz, Handy, Jones, McNiece, Morris, and Smith (among others).

### C. *Is there a valid delegation clause?*

The DRP states in relevant part:

> The Arbitrator, and not any federal, state, or local court or agency shall have the exclusive authority to resolve any Dispute relating to the interpretation, applicability, enforceability, or formation of this DRP or any associated agreement to arbitrate under its terms, including but not limited to any claim that all or part of this DRP or associated arbitration agreement is void or voidable.

15

*See* Doc. No. 27 at 30, 91. This is a valid and enforceable delegation clause. *See Kubala*, 830 F.3d at 204 (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 66 (2010)); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 202 L. Ed. 2d 480 (2019). Thus, the arbitrator and not the Court should be the decisionmaker on whether Plaintiffs' claims are arbitrable.

## IV. Conclusion

Finding that a valid arbitration agreement binds the parties to this action, the Court **GRANTS** Defendant's Motion. Per Fifth Circuit precedent, "dismissal, as opposed to a stay pending arbitration is proper 'when all of the issues raised in the district court must be submitted to arbitration.'" *Rainey v. Citigroup, Inc.*, 779 F. App'x 258, 259 (5th Cir. 2019) (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)). Because the Court has determined that all of the issues raised must be submitted to arbitration, the Court declines to retain jurisdiction over the action and dismisses it with prejudice. Plaintiffs must pursue their claims against Defendant in arbitration.

**SO ORDERED.**

Signed March 22nd, 2022

*Ed Kinkeade*
_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE